UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SAN FRANCISCO BAY CONSERVATION AND DEVELOPMENT COMMISSION,<br><br>Plaintiff,<br><br>v.<br><br>UNITED STATES ARMY CORPS OF ENGINEERS, et al.,<br><br>Defendants. | Case No. 16-cv-05420-RS (JCS)<br><br>**ORDER REGARDING MOTION TO COMPLETE AND/OR SUPPLEMENT ADMINISTRATIVE RECORD**<br><br>Re: Dkt. No. 64 |

## I. INTRODUCTION

This case, brought under the Administrative Procedures Act (the "APA"), concerns decisions by Defendant U.S. Army Corps of Engineers (the "Corps") regarding dredging in San Francisco Bay. Plaintiff San Francisco Bay Conservation and Development Commission (the "Commission") and Plaintiff-Intervenor San Francisco Baykeeper ("Baykeeper") (collectively, "Plaintiffs") move to add documents to the administrative record filed by the Corps, either under a theory of completing the record with documents that were before the Corps when it reached its decision, or under a theory of supplementing the record with additional evidence necessary for the Court's review of the Corps's decision. The Honorable Richard Seeborg referred the present motion to the undersigned magistrate judge for decision. For the reasons discussed below, the motion is GRANTED in part and DENIED in part, without oral argument.

## II. BACKGROUND

Plaintiffs challenge two decisions by the Corps: a November 10, 2015 decision that the Corps would not comply with conditions imposed by the Commission for dredging in San Francisco Bay, and a January 12, 2017 memorandum confirming that as a result of the

Commission's conditions, the Corps would cease to dredge two deep water channels annually, and would instead alternate dredging one channel per year. *See* Commission Supp'l Compl. (dkt. 50) ¶¶ 104, 105; Baykeeper 1st Am. Compl. (dkt. 51) ¶¶ 142, 144, 156, 158; Mot. at 5. The Corps stated that it would not comply with the Commission's requirements at issue, which concern the disposal of dredged material and the use of hydraulic dredging equipment (also known as "hopper" dredges), because the conditions conflicted with the regulatory requirement that the Corps use "the 'least costly, environmentally acceptable manner [of dredging], consistent with the engineering requirements,'" which the Corps refers to as "the federal standard." AR Ex. 719 (November 2015 letter, quoting 33 C.F.R. § 336.1(c)(1)). According to Plaintiffs, the Corps's 2015 and 2017 decisions violate the Coastal Zone Management Act (the "CZMA"), the Corps's regulations, the Federal Water Pollution Control Act, the National Environmental Policy Act, and the APA. *See generally* Commission Supp'l Compl. (asserting violations of the CZMA, Corps regulations, and the APA); Baykeeper 1st Am. Compl. (asserting violations of all of these statutes and regulations.

        In their present motion, Plaintiffs identify 100 documents that they believe should be added to complete the record, and also ask that the Corps be required to complete a category of "memoranda for the record," or "MFRs". Mot. (dkt. 64) Ex. A.[1] In its opposition brief, the Corps agrees to add sixty-six of those documents to the record, as well as two additional MFRs, because it "agrees that these specific documents were considered by the Corps in reaching the decision being challenged," and asserts that another sixteen documents were already included in the record. Opp'n (dkt. 65) Ex. A. In their reply, Plaintiffs withdraw their requests to add three documents and concur that thirteen documents were already included, leaving a total of eighteen identified documents in dispute. Reply (dkt. 68) Ex. A. Specifically, the parties dispute whether three identified documents already exist in the record, and whether fifteen identified documents should be added. *See id.* The parties also dispute whether the Corps's internal deliberations constitute

---

[1] The list attached to Plaintiffs' motion runs from 1 to 101, but the line for document number 12 is intentionally left blank to account for a duplicate document that had erroneously been listed separately in the parties' earlier discussions.

2

part of the administrative record, particularly with respect to the Corps's decision to adopt "Course of Action #2" and defer dredging certain channels on alternating years, and whether the Corps must create a privilege log of any documents that it is withholding based on the deliberative process privilege. *See* Mot. at 23–25; Opp'n at 18–25; Reply at 8–10, 11–15.

## III. ANALYSIS

### A. Legal Standard

Under the APA, a reviewing court shall "hold unlawful and set aside agency action, findings, and conclusions found to be . . . arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). The statute expressly provides that in determining whether a decision is arbitrary and capricious, "the court shall review *the whole record* or those parts of it cited by a party . . . ." 5 U.S.C. § 706 (emphasis added). The Ninth Circuit has held that "'[t]he whole record' includes everything that was before the agency pertaining to the merits of its decision." *Portland Audubon Soc. v. Endangered Species Comm.*, 984 F.2d 1534, 1548 (9th Cir. 1993) (citing *Thompson v. U.S. Dep't of Labor*, 885 F.2d 551, 555–56 (9th Cir. 1989)). The record "'consists of all documents and materials directly or *indirectly* considered by agency decision-makers and includes evidence contrary to the agency's position.'" *Thompson*, 885 F.2d at 555 (quoting *Exxon Corp. v. Dep't of Energy*, 91 F.R.D. 26, 32 (N.D. Tex. 1981)) (emphasis added in *Thompson*). Documents that were before the decision maker may not be excluded from the record "simply because defendants claim that they did not 'rely' upon" particular documents. *Ad Hoc Metals Coal. v. Whitman*, 227 F. Supp. 2d 134, 139 (D.D.C. 2002); *see also, e.g.*, *Oceana, Inc. v. Pritzker*, No. 16-cv-06784-LHK (SVK), 2017 WL 2670733, at *2 (N.D. Cal. June 21, 2017). "An incomplete record must be viewed as a 'fictional account of the actual decisionmaking process,'" because "[i]f the record is not complete, then the requirement that the agency decision be supported by 'the record' becomes almost meaningless." *Portland Audubon*, 984 F.2d at 1548 (quoting *Home Box Office, Inc. v. Fed. Commc'ns Comm'n*, 567 F.2d 9, 54 (D.C. Cir. 1977)). A plaintiff may therefore move to complete the record submitted by the defendant agency.

In a 2017 decision, Judge Van Keulen succinctly summarized the standard applied in this

3

district for such motions:

> The agency's designation of the record is accorded a strong presumption of regularity and completeness, which the plaintiff must overcome with "clear evidence." *Gill v. Dep't of Justice*, No. 14-cv-03120-RS (KAW), 2015 U.S. Dist. LEXIS 170347, at *15, 2015 WL 9258075 (N.D. Cal. Dec. 18, 2015). To meet this standard, the plaintiff must identify the allegedly omitted materials with sufficient specificity and "identify reasonable, non-speculative grounds for the belief that the documents were considered by the agency and not included in the record." *Id.* at *16–17 (internal quotation marks and citations omitted). The plaintiff can also rebut the presumption of completeness by showing that the agency applied the wrong standard in compiling the record. *See, e.g.*, *Nat'l Wildlife Fed'n v. Nat'l Marine Fisheries Serv.*, No. CV01-640-RE, 2005 U.S. Dist. LEXIS 16655, at *10, 2005 WL 1182725 (D. Or. March 3, 2005) (holding presumption of completeness overcome where agency excluded documents because they did not "form the basis" for the agency's determination). The plaintiff need not show bad faith or improper motive to rebut the presumption. [*California ex rel. Lockyer v. U.S. Dep't of Agric.*, Nos. C05-03508 EDL & C05-04038], 2006 U.S. Dist. LEXIS 15761, at *9, 2006 WL 708914 [(N.D. Cal. Mar. 16, 2006)].

*Oceana*, 2017 WL 2670733, at *2.

If evidence was not in fact part of the administrative record, it may only be considered in an APA case under certain "narrowly construed" exceptions:

> (1) if admission is necessary to determine "whether the agency has considered all relevant factors and has explained its decision," (2) if "the agency has relied on documents not in the record," (3) "when supplementing the record is necessary to explain technical terms or complex subject matter," or (4) "when plaintiffs make a showing of agency bad faith."

*Lands Council v. Powell*, 395 F.3d 1019, 1030 (9th Cir. 2005) (quoting *Sw. Ctr. for Biological Diversity v. U.S. Forest Serv.*, 100 F.3d 1443, 1450 (1996)). A narrow scope of these exceptions is necessary to prevent "the federal courts [from] proceeding, in effect, de novo rather than with the proper deference to agency processes, expertise, and decision-making." *Id.*

**B.    Plaintiffs Have Rebutted the Presumption of Completeness**

In response to Plaintiffs' present motion, the Corps conceded that the majority of documents Plaintiffs identified as missing from the administrative record should be included, and had been "inadvertently omitted." *See* Opp'n at 13 & Ex. A. The Corps argues that such omissions do not rebut the presumption that the record is complete, citing a decision from the Eastern District of California, *In re Delta Smelt Consolidated Cases*. Opp'n at 13 (citing *Delta*

4

*Smelt*, No. 1:09-CV-1053 OWW DLB, 2010 WL 2520946, at *1, 3 (E.D. Cal. June 21, 2010)). Plaintiffs inaccurately characterize *Delta Smelt* as considering only "technical inaccuracies in the certified index, such as mis-numbering." Reply at 5. In fact, the court in that case noted that the defendants "submitted five versions of the [administrative] record, twice because they failed to include thousands of documents." *Delta Smelt*, 2010 WL 2520946, at *3.

Although Plaintiffs' argument here regarding *Delta Smelt* is off base, this Court respectfully disagrees with the Eastern District's conclusion that a presumption of completeness can be maintained where all parties agree that the record submitted, and certified as complete, by the defendant in fact omitted documents that should have been included. The *Delta Smelt* court observed that it "is neither irregular nor particularly surprising that in this complex case, brought on an expedited basis due to the urgent nature of Plaintiffs' requests for relief, some documents that belong in the AR were inadvertently omitted." *Id.* Such omissions may not be surprising in some circumstances, but an expectation that documents will be omitted is inconsistent with a presumption that they will not be omitted. The presumption of completeness is not based on the defendant's good or bad faith, but on whether a court can expect that the record is in fact complete. *See Lockyer*, 2006 WL 708914, at *2. Here, the parties engaged in extensive discussions regarding the scope of the record and reached an impasse before the Corps filed what it certified to be a complete administrative record. Maharg Decl. (dkt. 64-2) ¶ 4(a)–(k). Only after Plaintiffs filed their present motion did the Corps concede that it had inadvertently failed to include most of the documents at issue in the motion. Whether or not such omissions might be understandable or expected, the Court will not presume that the record is complete after it has been shown, to the satisfaction of all parties, to be incomplete. Plaintiffs have therefore rebutted the presumption, although the burden remains on Plaintiffs to show that particular documents should be included.

Because the Court holds that the admittedly incomplete nature of the current record itself rebuts the presumption of completeness, the Court need not address Plaintiffs' argument that the phrasing of the Corps's certification demonstrates that the Corps applied the wrong legal standard in compiling the record. The Corps has agreed to include Plaintiffs' proposed language—

5

affirming the inclusion of "all documents and materials directly or indirectly considered by the agency in reaching its decision"—in certifying the corrected record after adding the documents it concedes it omitted from the record as originally compiled. As should go without saying, it is compliance with rather than mere assertion of the certification that matters, and the Corps must include in the corrected record all documents that meet that standard.

### C. Category 11: "West Coast Hopper Dredge"

Plaintiffs seek to include three additional documents regarding the use of hopper dredges, which they identify as document number 2 ("FY 2016 West Coast Hopper Dredge Planning"), document number 3 ("FY 2017 West Coast Hopper Dredge Planning"), and document number 4 ("2017 West Coast Hopper Bid Abstract"). Plaintiffs contend that the Corps included a planning analysis document for fiscal year 2015 in the record as exhibit 448 that is equivalent to the documents they seek for subsequent years as document numbers 2 and 3, and bid abstracts for fiscal years 2015 and 2016 as exhibits 447 and 449 that are equivalent to the 2017 abstract they seek as document number 4. Reply at 10–11. According to Plaintiffs, because these documents address "the recommended use of, and the feasibility, necessity and relative costs of benefits of" hydraulic as opposed to mechanical dredging, or more generally "the costs of hydraulic dredging," "the Corps must have considered these documents" in reaching the challenged 2015 and 2017 decisions. *Id.*

The fact that the documents might be relevant to those decisions does not establish that the Corps actually considered them, either directly or indirectly. Plaintiffs have identified no evidence that the documents were created by the particular Corps personnel or specific departments responsible for the challenged decisions, or that such personnel actually received or discussed these documents. Plaintiffs have not met their burden to show that these documents should have been included in the administrative record as documents that were actually "before" the Corps when it reached the challenged decisions. Plaintiffs' motion to include these documents in the record is DENIED, without prejudice to Plaintiffs renewing their request if other documents subsequently produced or added to the record clearly show that the Corps considered these documents in reaching the challenged decisions.

In addition to documents in the record, however, a court may also consider documents that were not included in the record as may be necessary to determine "whether the agency has considered all relevant factors" in reaching its decision. *Lands Council*, 395 F.3d at 1030. The inclusion of the 2015 hopper dredge planning document (AR Ex. 448) and the 2015 and 2016 bid abstracts (AR Exs. 447, 449) indicates that the Corps considered those documents in reaching the decisions at issue. If more recent versions of those documents were available at the time of those decisions, and included materially different information that undermined the decisions, the Corps's reliance on outdated materials could perhaps support a conclusion that its decisions were arbitrary and capricious, in violation of the APA.[2] Because the Corps could not be faulted for failing to consider documents that did not yet exist at the time of its decision, this rationale is limited to documents existing at the time of its January 2017 decision.[3] The Corps is therefore ORDERED to produce to Plaintiffs the materials that Plaintiffs identified as document numbers 2, 3 and 4, to the extent that such documents existed before January 12, 2017 and have not already been provided to Plaintiffs through a Freedom of Information Act request or some other means. Those documents are not added to the record at this time, but Plaintiffs may seek to present them as extra-record evidence if they believe the documents show that the Corps failed to consider all relevant factors.

**D. Category 16: Memoranda for the Record**

Exhibits 563 to 578 of the administrative record consist of sixteen "memoranda for the record," or "MFRs," that the Corps prepared regarding dredging of the five deep water channels that the Corps maintains in San Francisco Bay. In their present motion, Plaintiffs sought any additional MFRs regarding dredging of those channels in fiscal years 2016 and 2017, through the date of the challenged decision in January 2017. The Corps stated in its opposition brief that it "does not oppose supplementing the administrative record with the documents requested by

---

[2] The undersigned expresses no opinion on the merits of such an argument, or on the question of whether these documents in fact warrant consideration as extra-record evidence, both of which are issues to be presented to Judge Seeborg in the context of a motion addressing the merits of the case.
[3] It is not clear from the present record when documents 2, 3, and 4 were created.

7

1  Plaintiffs in" several enumerated categories, including "Cat. 16 MFRs." Opp'n at 7 n.4. The

2  Corps listed two additional MFRs in its chart of documents to be added to the record. Opp'n Ex.

3  A. In their reply, Plaintiffs state that they "appreciate the Corps' agreement to include two

4  additional MFRs," but that "it is unclear whether the Corps has agreed to include all MFRs that it

5  prepared for any dredging performed in any deep draft in-Bay federal navigation channel between

6  January 2016 and January 2017, as Plaintiffs requested." Reply at 11. Plaintiffs ask the Court to

7  require the Corps to verify that it has included all such documents. *Id.*

Footnote 4 of the Corps's opposition plainly states the Corps's non-opposition to Plaintiffs' request for MFRs in category 16. Opp'n at 7 n.4. On the basis of that non-opposition, Plaintiffs request to add such documents to the record is GRANTED. The Corps is ordered to add to the administrative record all "MFRs prepared by the Corps for all in-Bay deep draft federal navigation channels the Corps dredged in FY 2016 and FY 2017, through the date of the last challenged decision in January 2017," *see* Mot. at 17, which is not necessarily limited to the two additional MFRs included in the Corps's chart of documents.

### E. Categories 12 and 21: Documents Whose Inclusion in the Existing Record Is Disputed

Plaintiffs object that certain documents that the Corps claims already exist in the record are not in fact the same documents as the exhibits identified by the Corps. Plaintiffs' document number 7 is identified as a July 24, 2014 email from the Corps to the Regional Board regarding a workshop. The Corps asserts that document 7 is included in the record as exhibit 468. Exhibit 468 is an internal Corps email from the same date concerning the same workshop. Because there is no indication that exhibit 468 was sent to the Regional Board, Plaintiffs are correct that it is not the same document. The Corps has presented no argument why document 7 should not be included in the record and has agreed to include all other documents Plaintiffs seek to add to the same category, identified as "12: EA/EIR 2015." *See* Opp'n at 7 n.4 (stating that the Corps does not oppose supplementing the record with the documents identified in this category). Plaintiffs' motion is GRANTED as to document 7.

Plaintiffs' document number 50 is identified as a June 4, 2015 email from the Commission

1  to the Corps regarding a Corps presentation at a Commission meeting the same day. The Corps
2  asserts that document 50 is included as exhibit 688, but that exhibit is in fact an email dated June
3  3, 2015—one day prior to the date of document 50. Plaintiffs are correct that this is not the same
4  document. As with document 7, the Corps has presented no argument why document 50 should
5  not be included and has agreed to include all other documents Plaintiffs seek to add to the same
6  category, which for this document is "21. BCDC: 2015–2017 CD." *See* Opp'n at 7 n.4. Plaintiffs'
7  motion is GRANTED as to document 50.

Plaintiffs' document number 58 is identified as a December 3, 2015 email from the Corps to the Commission regarding a request to extend the window for cleanup work. The Corps asserts that document 58 is included as exhibit 722. That exhibit appears to match the description given of document 58, although it is of course possible that multiple emails addressing the same subject were sent on the same day. If document 58 is in fact distinct from exhibit 722 and not otherwise included in the record, Plaintiffs' motion is GRANTED as to document 58 for the same reasons given above for documents 7 and 50. In the highly unlikely event that, after further discussion, the parties are unable to agree as to whether document 58 is the same document as exhibit 722, the parties shall file a joint notice to that effect attaching both documents no later than August 20, 2018, and the Court will resolve the dispute.

### F. Category 33: "Other (CORPS Budget Documents)"

Plaintiffs also request to include in the administrative record twelve documents related to the Corps's budget, including: (1) "justification sheets" showing the funds available, proposed uses of funds, and the need for dredging of each federally maintained deep draft channel in the United States; (2) "work plans" summarizing the same or similar information in table form; (3) "press books" summarizing maintenance and operation budgets approved by Congress for each deep draft channel; and (4) a spreadsheet showing budgets allocated for a number of dredging projects in northern California in fiscal year 2017. *See* Reply at 6–7. The Corps asserts that these documents "were not considered by the Corps' decision-maker." Opp'n at 14.

According to Plaintiffs, "the Corps necessarily must have directly or indirectly considered these documents" in reaching the decisions challenged here because the documents concern the

amounts of funds available and the need for dredging in the channels at issue. Reply at 7. Plaintiffs are incorrect; the fact that documents contain potentially relevant information does not establish that such documents were actually "before" the relevant decision maker at the Corps when it made its decisions.

Plaintiffs also contend that the Corps "effectively admits that it considered its 2015–2017 budgets" in making these decisions, based on the Corps's statement "that '[t]he Federal standard is designed to allow the Corps to responsibly manage a nationwide navigation dredging program, which is subject to limited appropriated funds that must be allocated nationally among competing projects.'" *Id.* (quoting Opp'n at 4) (alteration in original). The statement that Plaintiffs quote from the Corps's brief describes the background principles underlying the regulation requiring the Corps to use the least costly alternative that meets environmental and engineering requirements. *See* 33 C.F.R. § 336.1(c)(1). Similar statements in the Corps's November 10, 2015 letter to the Commission also describe the basis for the regulation, not any particular budgetary constraints that in themselves prevented the Corps from complying with the Commission's conditions on dredging. Plaintiffs do not explain how any actual budgetary surplus or shortfall would be relevant to the Corps's stated basis for its decision, i.e., that § 336.1(c)(1) requires the Corps to use the least costly means of dredging. Nor do Plaintiffs present any evidence that the Corps actually considered the budget documents at issue in reaching its decisions. Plaintiffs' motion to add these documents to the record is therefore DENIED, without prejudice to Plaintiffs renewing their request if subsequently produced evidence shows that the Corps considered the budget documents in reaching the challenged decisions.

This order does not reach the issue of whether these budget documents, all of which are already in Plaintiffs' possession, can be considered as extra-record evidence under any of the exceptions set forth in *Lands Council*, 395 F.3d 1019, 1030. The question of whether evidence is admissible, as opposed to whether it constitutes part of the administrative record, is best addressed to Judge Seeborg in the context of a motion on the merits.

**G. Internal Deliberative Documents**

The Corps acknowledges that the "Northern District of California . . . requires the

10

government to identify and describe deliberative materials withheld from the administrative record as a matter of course," but argues that this district stands alone in that practice, which the Court should reject in favor of the D.C. Circuit's rule, also applied by some district courts outside of that circuit, that deliberative materials are not part of an administrative record. Opp'n at 21–23 (citing *San Luis Obispo Mothers for Peace v. U.S. Nuclear Regulatory Comm'n*, 782 F.2d 26 (D.C. Cir. 1986) (en banc), as well as several district court decisions). In response, Plaintiffs overstate the significance of prior decisions in this district, describing them as "precedential authority" and "binding precedent," and as "provid[ing] the controlling legal standard." Reply at 2, 13, 14.

"'A decision of a federal district court judge is not binding precedent in either a different judicial district, the same judicial district, or even upon the same judge in a different case.'" *Camreta v. Greene*, 563 U.S. 692, 709 n.7 (2011) (quoting with approval 18 J. Moore et al., Moore's Federal Practice § 134.02[1] [d], pp. 134–26 (3d ed. 2011)). Nevertheless, in the absence of Ninth Circuit authority to the contrary, this Court is inclined to follow the practice uniformly applied in this district, which is well reasoned and gives meaning to the requirement that a reviewing court consider "all documents and materials directly or indirectly considered by agency decision-makers." *See Thompson*, 885 F.2d at 555 (emphasis and internal citation omitted).

Judge Orrick's recent decision in *Sierra Club v. Zinke*, provided here by Plaintiffs as a statement of recent decision (dkt. 74), considered and rejected the same arguments presented by the Corps in this case. *See Sierra Club v. Zinke*, No. 17-cv-07187-WHO, 2018 WL 3126401, at *2–3 (N.D. Cal. June 26, 2018). "It is obvious that in many cases internal comments, draft reports, inter– or intra-agency emails, revisions, memoranda, or meeting notes will inform an agency's final decision." *Inst. for Fisheries Res. v. Burwell*, No. 16-cv-01574-VC, 2017 WL 89003, at *1 (N.D. Cal. Jan. 10, 2017). This is particularly true where, as here, the Corps has included selected internal communications and memoranda in the administrative record, but insists that it need not even assert a privilege to wall off other internal documents as "simply not a part of the administrative record." Opp'n at 25; *see, e.g.*, AR Exs. 579–80, 582–86, 588–92, 594 (identifying a number of documents included in the record as "USACE internal email[s]" and attachments thereto). Allowing agencies discretion to determine which internal communications

11

to include or withhold, without explanation or even bare assertion of privilege, "would invite all manner of mischief." *See Regents of the Univ. of Cal. v. U.S. Dep't of Homeland Sec.*, No. C 17-05211 WHA, 2018 WL 1210551, at *6 (N.D. Cal. Mar. 8, 2018) (requiring a privilege log for documents withheld from an administrative record).

The only Ninth Circuit decision to squarely address the issue, albeit subsequently vacated on unrelated grounds by the Supreme Court, declined on a petition for mandamus to disturb a district court order requiring a privilege log and inclusion of non-privileged deliberative documents in an administrative record. *See In re United States*, 874 F.3d 1200, 1210 (9th Cir.), *vacated on other grounds*, 138 S. Ct. 443 (2017). The Ninth Circuit distinguished the D.C. Circuit's *Mothers for Peace* decision on the basis that it involved "transcripts of literal deliberations among the members of a multi-member agency board," which are particularly analogous to internal mental processes of a single decision maker, more so than emails and memoranda created over the course of an agency's operations. *Id.*

This rule is not a blanket license for plaintiffs to discover all of a government defendant's internal deliberations. The deliberative process privilege applies to APA cases, but requires an individualized assessment of particular documents to determine whether they fall within the scope of the privilege. *See Desert Survivors v. U.S. Dep't of the Interior*, 231 F. Supp. 3d 368, 379–80, 382–86 (N.D. Cal. 2017) (concluding that the privilege applies in the APA context, and discussing the balancing test of *FTC v. Warner Communications, Inc.*, 742 F.2d 1156 (9th Cir. 1984)). Decisions from this district have consistently held that parties that intend to withhold documents based on the deliberative process privilege must produce a privilege log, at least where the presumption of completeness has been rebutted, because "[t]he only way to know if privilege applies is to review the deliberative documents in a privilege log." *Sierra Club*, 2018 WL 3126401, at *5 (citing, e.g., *Inst. for Fisheries Res.*, 2017 WL 89003, at *1); *see also In re United States*, 874 F.3d at 1210 (declining to disturb the district court's order requiring a privilege log).

Accordingly, Plaintiffs' motion is GRANTED as to internal deliberative documents that the Corps directly or indirectly considered in reaching the decisions challenged in this case. The Corps must either include those documents in the administrative record or, if it believes any such

12

documents to be privileged—whether based on the deliberative process privilege or any other privilege doctrine—produce a privilege log stating particularized reasons why it has withheld a document in whole or in part (as in the case of documents included in the record with redactions).

## IV. CONCLUSION

Based on the Corps's non-opposition, Plaintiffs' motion is GRANTED as to document numbers 5–11, 13–17, 19–21, 23–29, 31–44, 46–47, 49–56, 58 (to the extent it is distinct from the already-included exhibit 722), 61, 63, 65–77, 79–83, and 85–87, as well as any MFRs falling within the request in Plaintiffs' motion, all of which the Corps shall include in a supplement to the administrative record. The motion is DENIED as moot with respect to documents 18, 22, 30, 45, 48, 51, 57, 59, 60, 62, 64, 78, 84, which the parties agree are duplicative to existing documents in the record, and with respect to documents 1, 99, and 100, for which Plaintiffs have withdrawn their requests. The motion is further DENIED for the reasons discussed above with respect to documents 2–4, 88–98, and 101, without prejudice to Plaintiffs asking Judge Seeborg to consider such documents as extra-record evidence, or renewing their request to add these documents to the record if subsequently produced evidence shows that the Corps considered them. Plaintiffs' request that the Corps be required to include non-privileged internal documents in the administrative record, and to produce a log of any assertions of privilege, is GRANTED.

The parties are ORDERED to meet and confer regarding a schedule for lodging a supplemental administrative record, producing a privilege log, and challenging any assertions of privilege. The parties shall file a stipulated scheduling order no later than August 20, 2018. If the parties are unable to reach an agreement as to that schedule, they may file a joint letter brief, not to exceed five pages, outlining their proposals and points of disagreement by the same date.

**IT IS SO ORDERED.**

Dated: August 13, 2018

JOSEPH C. SPERO
Chief Magistrate Judge

13